# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KHALED ELSISI, NAJY KANAN, AHMED KHDER, RICARDO MARQUEZ, ASHER BOMANI LEWIS, LUIS PIÑOS, CHRISTINE LINDA MASTERS, AHMED SHARAFELDIN, LINWOOD WALKER, BARRY ROSNER, STUART WAYNE SPRINGFIELD, ROBERT YENG, JUAN JUNIOR NICASIO, GABRIELA JANETA ROMAN, CHRISTOPHER EMANUEL SZABO, and ALIQWAN PACK** | **Civil Action No. 2:23:cv – 20773 JURY TRIAL DEMANDED** |

**Plaintiffs**

v.

**CFT SOLUTIONS, LLC, ARTHUR PERCY, RENAN DE ROCHA GOMES BASTOS, YVENSON ISRAEL, DIVINE-SEVEN EL, CHUCK MARSHALL, MICHAEL JEX, and ELIDO SANTANA**

**Defendants**

## MOTION FOR DECLARATORY JUDGEMENT, TO VOID LPOAs, AND DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION

## INTRODUCTION

Plaintiffs, proceeding pro se, hereby move this Honorable Court for an order declaring the offshore corporations fake, the Limited Power of Attorney Agreements (LPOAs) null and void, and denying Defendants' Motion to Compel Arbitration. In support of this Motion, Plaintiffs state as follows:

## FACTUAL BACKGROUND

Plaintiffs are victims of a fraudulent Forex investment scheme orchestrated by Defendants.

Defendants created fake corporations and misled Plaintiffs into signing LPOAs with these non-existent entities.

Plaintiffs Elsisi, Khder, Sharafeldin, Walker, Rosner, Pinos, Kanan, and Yeng were provided with fraudulent Jamaican corporations (Exhibit A) facilitated by Defendant Santana and created by CFT agent Dominic Peterkin (Exhibit B), who is a known associate of Defendants Santana and Jex (Exhibit C). The NJ Plaintiffs' fake corporations are as follow: Plaintiff Khder – Elahram Inc, Plaintiff Sharafeldin – AJS Inc, Plaintiff Rosner – Rayblack LLC, Plaintiff Elsisi – Elmohaymen Inc, Plaintiff Walker – Magnus IV Investments, Plaintiff Kanan – Mukhmasnhyt Inc, Plaintiff Yeng – MYR Enterprise, Plaintiff Pinos – Company Moderna.





**Exhibit B**



# Exhibit C



These Plaintiffs were not informed by Defendants Jex and Santana that the offshore corporations were fraudulent (Exhibit D) and thus entered into the arrangements in good faith.

**Exhibit D**



**Exhibit D**



Later, the plaintiffs searched the Companies Office of Jamaica and verified that the corporations were not existent in the database. Also, the Companies Office of Jamaica (ORC) confirmed that the certificates in question are not registered entities, so the corporations are fake (Exhibit E).





# Exhibit E

**Mills, Lashawn** <millsl@orcjamaica.com>

to Camille, me

Good Day Mr. Román,

Thank you for contacting the Customer Service Department by email.

Upon reviewing our register, we have found that the certificates you have submitted are not registered entities within our database.

Kind regards,
Lashawn Mills

Wed, Aug 28, 7:17 PM (4 days ago)





Plaintiff Roman was induced to establish a purported Panamanian corporation, facilitated by Defendant EL and created by Percy and citizen Alexander Enrique Garcia Lopez, an investor associated with Defendant Percy, and paid $1500 for it (Exhibit F).

**Exhibit F**



Defendant EL failed to inform Plaintiff Roman at any time the corporation was fraudulent and entered into the agreement in good faith. Plaintiff Roman executed the Limited Power of Attorney (LPOA) using the false identity.

Later, the Panama Registry has confirmed the corporation's fraudulent status (Exhibit G).



Plaintiff Masters established a fraudulent Panamanian corporation, which was facilitated by Defendants Marshall and Israel, and created by the same Panamanian citizen, Alexander Enrique Garcia Lopez. Plaintiff Masters paid $1,500.00 for it, and an additional $1280.00 for an amendment less than one year later (Exhibit H).

**Exhibit H**



Plaintiff Masters executed the Limited Power of Attorney (LPOA) using this fraudulent identity.

Later, the Panama Registry has confirmed the corporation's fraudulent status (Exhibit I). There is also a different corporation legally registered under the same folio number which has nothing to do with Plaintiff Masters (Exhibit J).

# Exhibit I

Sent from my iPhone

Begin forwarded message:

**From:** Registro Informa <inforegistropublico@registro-publico.gob.pa>
**Date:** 2 July 2024 at 11:12:30 PM AEST
**To:** Christine Masters <chrissy.masters@icloud.com>, Registro Informa <inforegistropublico@registro-publico.gob.pa>
**Subject: RE: Authentication of Corporation- 3rd email**


Good Morning,

The certificate does not contain information registered at our database, all our certificates show a QR and a code that you can verify at our website, also our certicates are in spanish, hope this is hepful, best regards,


Registro Público de Panamá

Plaintiffs Lewis and Nicasio were induced to form a fraudulent Haitian corporation, which was facilitated and created by Defendant Israel, with the assistance of individuals in Haiti, Defendant Israel's country of birth. Both Plaintiffs paid $1500 each for their corporations (Exhibit K).







Lewis, Nicasio, Pack and Marquez executed a CFTraders Limited Power of Attorney (LPOA) which did not contain an arbitration clause (Exhibit L).

**Exhibit L**

# CFTraders
## Power of Attorney for Individuals

Important: This Power of Attorney is a legally binding document provided in accordance with the terms and conditions contained in the Service Agreement.

*Complete where appropriate

1. Details of the Client – Individual (Please Handwrite)

| | | |
|---|---|---|
| 1.1 | Full name of the Client: | Asher Romani Lewis |
| 1.2 | Identification no/Passport number: | ███████████ |
| 1.3 | Residence Address: | ██████████ NY, 8712| |
| 1.4 | Registered E-mail: | fxcewednesday@█████ gmail.com |

2. Details of the Representative – Individual*

| | |
|---|---|
| 2.1 | Full name the Representative: |
| 2.2 | Identification no.: |
| 2.3 | Residence Address: |

3. Details of the Representative – Corporate Entity*
*If this section is completed, CFTraders reserves the right to request additional information

| | |
|---|---|
| 3.1 | Full name the Representative: |
| 3.2 | Company Incorporation Number: |
| 3.3 | Residence Address: |

---

**Exhibit L**

4. General

4.1 By signing this Power of Attorney ("POA"), the Client agrees to authorize the Representative to act as his/ her/ their attorney-in-fact and in- law for the purposes described below, regarding the services offered by CFTraders.

4.2 This POA becomes effective once received and accepted as valid, by the Back-Office Department but not before the Back Office Department has approved the Client and has completed all the relevant Know-your- Customer and Anti-Money Laundering procedures.

4.3 The Client has already entered or will enter into a binding Agreement with CFTraders by accepting the Service Agreement, which includes, inter alia, the Terms and Conditions, the Client Agreement and any attached Annexes, the 'Order Execution Policy' and any other documentation uploaded on the Firm's website, as from time to time amended by CFTraders (collectively referred to 'Service Agreement').

4.4 The Client understands that CFTraders does not participate, in any way, in trading and/or other decisions made by the Representative and/or does not make any representations or warranties and/or assumes any obligations with regard to the actions and/or omissions of the Representative, either made negligently, innocently and/or fraudulently. The Client understands that his/she/ they shall have no claim whatsoever against CFTraders for any actions of the Representative.

4.5 The Client shall seek independent legal and/or financial and/or tax advice in relation to the content(s) of this POA and/or any other document associated with this POA. Nothing in this POA constitutes a recommendation, or offer to buy or sell in an investment, or an inducement to trade and CFTraders shall not be held liable for any losses incurred by the Client.

5. Power of Attorney

5.1 The Client understands and accepts that the Representative shall be entitled to have the powers granted herein below, in accordance with the Service Agreement. The Client agrees to ratify such instructions, as if performed by themselves. Therefore, the Firm, prior to execution, is under no responsibility to confirm such instructions with neither the Representative nor the Client. The Client understands that CFTraders will facilitate the above transactions without further direction and/or confirmation from the Client.

---

**Exhibit L**

5.2 The Client agrees that he/she/they shall indemnify and hold harmless the Firm, its officers, directors, employees, advisors, consultants or other partners from and against any loss and/ or liability that may arise in relation to this POA.

5.3 The Client declares that his/ her/ their decision for appointing an Representative for his/ her/ their behalf, is an informed one taken after carefully considering the risks involved in trading CFDs.

5.4 The Client consents and authorizes the Firm to disclose to the Representative any personal information and trading related information necessary under this POA.

5.5 All customers connected to this POA, cannot migrate to another strategy within FxWinning, during the next 12 months as from the date of customers resignation. In case of reversing this POA, this clause will remain in force during the above mentioned period.

> [RISK WARNING: Contracts for Difference ('CFDs') are complex financial products that are traded on margin. Trading CFDs carries a high level of risk since leverage can work both to your advantage and disadvantage. As a result, CFDs may not be suitable for all investors because you may lose all your invested capital. You should not risk more than you are prepared to lose. Before deciding to trade, you need to ensure that you understand the risks involved taking into account your investment objectives, level of experience and personal financial situation. Past performance of CFDs is not a reliable indicator of future results. Most CFDs have no set maturity date. Hence, a CFD position matures on the day you choose to close an existing open position. Seek independent advice, if necessary. CFTraders does not provide any investment advice and/or investment-investment recommendation.]

6. Revocation of this Limited Power of Attorney

6.1 This POA is for an infinitive period of time, unless terminated in accordance with the Service Agreement and/or this POA and/or any other agreement effective between the parties. The Client acknowledges that this POA may be revoked by CFTraders at any given time, for any or no reason, including but not limited to instances where the Service Agreement is terminated. The Client may, at any time, request the revocation of this POA by completing the relevant revocation form(s) and transmitting them via e-mail through their registered e-mail, given that there are no open positions. It is the sole responsibility of the Client to communicate the revocation of this POA to CFTraders and request the closure of any open positions, if any. Such revocation of the POA will become effective once received by the Back Office Department of CFTraders, provided that the above mentioned conditions, are met. Revocation of this POA shall not relieve

---

**Exhibit L**

the Client of any liability which has arisen, for any transaction initiated prior to such revocation.

6.2 The Client understands and accepts that if, at the time of the revocation of this POA, there are any funds available in the Client's trading account(s) then the Firm have the right to transfer such funds to the Client's Account.

7. Powers Granted to the Attorney
i. the Client, hereby ratify and confirm all and any of the following acts to be performed by the Representative as having been performed by myself. *Tick either (a) or (b)

The Representative shall have:

a.) Funding activities:
• Depositing and/or withdrawing money to and from my account with CFTraders, with

| Account Number (MT5): | 123767 |
|---|---|

• Permitting CFTraders to the Representative any account related information.

I hereby confirm that I have carefully read and understood the content of this POA in addition to the Service Agreement and any other documentation received during the on-boarding process, including any subsequent amendments and agree to be legally bound by them.

The Haitian corporations could not be authentic as to register a company in Haiti is a lengthy process. Defendant Israel created the entity in less than two weeks and a search for Plaintiffs' corporations showed that the mentioned entities are not registered in Haiti. One entity, Inevitable Gains LLC, is registered WY, USA and had nothing to do with Plaintiff Lewis, who resides in NV. Lewis sent his information to Haiti on April 3, 2023, and on April 19, 2023, he already had his Haitian Corporation Documents. It's impossible as the creation of a legal Haitian corporation takes several weeks not only two (Exhibit M).

FxWinning's CEO, David Merino, proposed the offshore corporation method to Defendant Bastos during a private conversation on January 31, 2022, held on WhatsApp (Exhibit N). Exhibit N is from the transcript of the jurisdictional discovery deposition of David Merino, Miami Florida case 2023-016392-CA-01, CFT Solutions LLC v. FxWinning



LMT.



HOME    UPDATES    BUSINESS    CONSULAR SERVICES ⌄    CULTURE ⌄    PRIVACITÉ    English ▾

# Exhibit M

## Company formation in Haiti

by Admin | May 28, 2020 | Business Information, Economy, News | 0 comments

There are several options available to entrepreneurs, both local and international, who would like to set up a business in Haiti.

- Sole Proprietorship
- Registered Partnership
- Limited Liability Company
- Corporation
- Subsidiary of a Foreign Company

The following will provide an overview of the procedures to follow for the Corporation (*Société Anonyme*) and the subsidiary. Incorporating a company in Haiti takes approximately six (6) weeks and is very inexpensive.



[                    ] Search

**Recent Posts**

Haïti pide ayuda internacional para afrontar los efectos del terremoto

# Exhibit N

```
              BY MR. TODD:
 16      Q.    I'll ask the question again: After discovering
       FXWinning's mistake, what was done to correct it?
 17           MR. BARAKAT:  Form.
 18           THE WITNESS:  I don't know.  I wasn't in the
 19      direction of the company.
 20           BY MR. TODD:
 21      Q.    Do you know if, for example, a review was done
 22      and people with false information were kicked out of
 23      FXWinning?
 24           MR. BARAKAT:  Form.
 25           THE WITNESS:  I don't know if there was a case
0133
  1      like that one that -- therefore, I wouldn't know if
  2      that would've happened or not.
  3           BY MR. TODD:
  4      Q.    That WhatsApp message I sent you, did that
  5      refresh your recollection as to the numerous
  6      conversations you had with Renan about Florida clients?
  7           MR. BARAKAT:  Form.
  8           THE WITNESS:  Like I said, I did not know where
  9      this gentleman was from.  I see him now, and it's
 10      like as if he were the first time.
 11           BY MR. TODD:
 12      Q.    Sent around a little bit ago, Exhibit 43.
 13      I'll be putting it on the screen.  It's another exchange
 14      from your WhatsApp messages with Renan that occurred on
 15      January 31, 2022.  Do you remember sending this message?
 16           (EXHIBIT 43 MARKED FOR IDENTIFICATION)
 17      A.    Yes, I remember this conversation.
 18           BY MR. TODD:
 19      Q.    You start the conversation with a message from
 20      you to Renan that says, essentially, "I also have the
 21      option for Americans.  I'm waiting for them to tell me
 22      deadlines and times for creating an offshore companies
 23      to give Americans the option to register as a company."
 24      Is that an accurate reflection of what that says?
 25      A.    Firstly, to allow a company that would allow
0134
  1      Americans seen.  And also -- and it also means that
  2      prior, this message was not effect -- no -- no -- this
  3      message was not accepted.  Which means that previously,
```

There is no evidence to suggest that any of the agents were involved in the WhatsApp conversation, nor that they were all acquainted with each other. Accordingly, it can be reasonably inferred that Defendant Bastos independently communicated this new method for each of the agents.

During the same interrogatory deposition, Merino stated that there was "an understanding" that numerous individuals from various countries had registered using fake documents. When asked to clarify whether these documents pertained to other identities, considering that many individuals possess dual citizenship, he refused to provide clarification, even with an interpreter present. He was aware of fake Jamaican IDs, not secondary citizenships, as the case in discussion involved an investor who signed up using his Jamaican passport. Merino was aware of CFT creating fake Jamaican IDs. The phrasing of the answer suggests that there was an understanding between Defendant CFT and FxWinning to use this method, as Merino stated, "......people from many countries WILL register with false documentation." Investors signing up using a second nationality would not create any confusion during the deposition (Exhibit O).

## Exhibit O

```
         BY MR. TODD:
    Q.   Well, he could have signed up with his
14  Jamaican passport, right?
15       A.   Yes.  There is an understanding that many
16  people from many countries will register with false
17  documentation.
18       MR. TODD:  Is it false if it's his legitimate
19    passport?
20       A.   I'm sorry, I don't understand the question.
21       Q.   Would it be false for Gary to sign up using
22  his legitimate Jamaican passport?
23       A.   I'm not an attorney.  I don't understand
24  perfectly the legal terms.  I wouldn't be able to answer
25  the question perfectly.
0132
 1       Q.   You know for a fact that numerous FXWinning
```

Based on the evidence presented, it can be reasonably concluded that Merino had knowledge of the use of fraudulent documents, agreed with this method including, but not limited to, fake identifications (Exhibit P). This knowledge extended beyond mere awareness of secondary citizenships. Exhibit P pertains to an investor, known to Plaintiff Roman, who chose not to participate in this case and represents a hybrid identification containing a true picture and name but a fake address and signature. This further corroborates that Defendant Bastos was also aware of this fraudulent activity and was apparently the initiator of the fake identifications' method.

# Exhibit P



Moreover, the agents were aware that the corporations were fake. The Jamaican corporations were made by a CFT agent, Dominic Peterkin. The Haitian corporations

were facilitated by Israel, who communicated this implication to his investors. While Nicasio and Lewis did not understand the significance of the disclosure at that time, it has now become clear as to its real meaning (Exhibit R). None of the plaintiffs could fathom the possibility that the defendants would procure fake documents. There is no evidence indicating that Dominic Peterkin, an associate of Defendant Jex, had any acquaintance or connection with Defendant Israel or EL. Therefore, it is reasonable to infer that the plan to establish fraudulent corporations originated from the CEO, Defendant Bastos.



## Exhibit R

<u>TRADING SOFTWARE SETUP PLEASE READ TWICE BEFORE STARTING!!!</u>

Please make sure you follow the steps below to properly create your brokerage account, and begin using the software.

THESE STEPS ONLY APPLY TO CLIENTS OUTSIDE THE USA. IF YOU ARE IN THE USA FOLLOW THE STEPS FOR USA CLIENTS ON THE LAST PAGE!!

STEP 1: Watch this video to learn how HFT Trading works, as well as see PAST performance (MyFXbook)
https://vimeo.com/656324919/c2a6963587

STEP 2: Watch this video to properly set up your account
https://screencast-o-matic.com/watch/crQoYAV6hgc

** If you are outside the USA you can use your country **

STEP 3: Complete the DocuSign LPOA (Limited Power of Attorney) Agreement. You will be provided with a link to complete the LPOA, after you open your account with the brokerage.

STEP 4: Complete the google form below ENTIRELY
https://forms.gle/DAoaZBz9WJ1LSXDh8

STEP 5: Make sure you completed all the steps otherwise your account will not be attached to the MAM (Multi Account Manager), and will not trade. However, once ALL the steps are completed the trading will commence AUTOMATICALLY.



# Exhibit R

## ** INSTRUCTIONS FOR USA CLIENTS **

Please note that the broker NO LONGER accepts USA clients. If you reside in the US and wish to participate, you will need to set up an offshore ENTITY/ BUSINESS.

We have an attorney that we use to help with this process, and you are welcome to use this attorney as well. Or, you can use your own attorney if you prefer. The setup fee is $1,000 USD and takes about 7-10 business days to complete.

This ENTITY is only for the use of setting up an account with the brokerage. There is NO NEED TO COMPLICATE IT...

Once your entity has been set up you will use that information to set up your account.

You will simply follow the same procedural setup steps listed on the first page of this document EXCEPT:

1: Where you input FIRST AND LAST name on the brokers account creation form, you will fill in your COMPANY NAME.

2: You will select the registration country of your ENTITY as your country when opening the account with the broker.

3: The LPOA you will fill in the name of your ENTITY instead of your first and last name

4: You will fill in the business ID number / registration number of your ENTITY instead of your Driver's License or Passport number.

5: You will upload documents using the same procedure outlined in the tutorial video on the first page of this document, EXCEPT:

The attorney will be the Representative (Registered Agent) of the company and you will upload his passport which he will provide you.

{DO NOT UPLOAD USA DOCUMENTS)

You will also upload your business documents as well under the "OTHER" category, within your broker back office.

There is also confirmation that some of Percy's investors (Exhibit S) communicated with Alexander Enrique Garcia Lopez, the creator of the fake Panamanian corporations, who asked Garcia for a "de facto corporation." The investors mentioned that a "broker," which Garcia later clarified meant "agent," told them that such a corporation would be acceptable (Exhibit T). While we are not aware if these investors understood what a "de facto corporation" was, we can attest that the plaintiffs in this case were unaware of such a corporation being created for them or that such an entity even existed. Contrary to this, their documents represent an incorporated entity, not a "de facto" one.

**Exhibit S**



| | |
|---|---|
| 174713 | List Investments LLC |
| 123376 | Luis Alfredo Dubois Ochoa |
| 123588 | Luis Alfredo Dubois Ochoa |
| 174679 | Lyfe Investments LLC |
| 159450 | Maria Masna |
| 171637 | Marion Moreddu Spangenberg |
| 161606 | Matthew George Whitaker |
| 128705 | Mauricio Daniel Vales Lemus |
| 146652 | Mauricio Lazo |
| 144199 | Maxdel Corp |
| 125643 | Mouriz Capital llc Company |
| 155796 | NAFT Investments Corp |
| 140292 | Otto Emilio Santano Cintora |
| 149159 | Otto Emilio Santano Cintora |
| 121253 | Otto Estuardo Dubois Santa Cru |
| 171010 | Prestige Capital Investments |
| 174909 | Prestige Capital Investments |
| 140182 | Samy Elias Jazrawi Jubs |
| 144274 | Sarel Meirovich |
| 154089 | Simone Emmanuelle Ilits Usage Famagalli |
| 162623 | Sofx Investments SDRL |
| 122222 | Steven Albert De La Fe |
| 123181 | Sutpaul Singh |
| 161658 | Synergy Connections Ldt |
| 153780 | The Vine Capital CORP |
| 148012 | Theodore Edward Rokita |
| 175022 | Vardan Karapetyan |

**Alexander Garcia Lopez**    **Exhibit T**    11:36 AM (3 hours ago)    

to me ▾

Gabriela

Here are the documents/emails you need. I hope they work for you.

I want you to know a few details so maybe you get to put all the pieces together:

I was first contacted by a guy from Florida named  Rafael Carnicer who called me and told me that i had been referred to him by a mutual connection (that he never agreed to inform me who that person was) and that he needed to discuss how to structure an investment on Forex. That was November 2011. Then another person (who claimed to work with Carnicer- Steve de la Fe) contacted me in early 2022. After those persons, Seven came onto the scene. And then Vince and two or maybe 3 other guys. Maybe a year later, Sarah and Angella appeared in the scene. But none of these 2 or Arthur requested a company. I knew they did a St. Kitts company (I don't have proof of that, I just recall a conversation).

In that first conversation with Carnicer and then with De La Fe, they told me that what they need was a vehicle that can represent them at FXW since they being US Citizens, were not allowed to do Forex. And that a "broker" told them to do a "De facto corporation" (A corporation created but not registered). So we discussed the pros and cons of that particular type of corporation and the pros and cons of a registered corporation and it was decided to move forward with that "de facto" or non-registered corporation because all they needed was a link between them (the investor), a foreign entity and Fx.

We are going to introduce the definition for a "de facto corporation." A "de facto corporation" refers to a legal recognition of a corporation, even if the articles of incorporation have not been properly filed. Essentially, it is a company that the state acknowledges as a corporation, even though it has not completed the formal incorporation process by filing the required Articles of Incorporation. It is an entity which is operated as a corporation without any documentation. Such a corporation does not necessitate a utility bill nor any registered or notarized documents to exist and is operated in the country or state where it was created. Additionally, the plaintiffs' corporations carry a registration number which demonstrates that they were fake and not "de facto."

Furthermore, the plaintiffs were not informed that a "de facto corporation" was being formed as no documentation would be necessary for such an entity. They were charged a large sum of money for the creation of the entity; and all the plaintiffs believed that it was a duly registered corporation.

Plaintiffs were not aware that the corporations involved were fictitious until mid-2023. At that time, withdrawals had already been halted for several months, and to date, no investor has recovered their funds.

Defendants used these fake corporations to perpetrate their fraud and gain control over Plaintiffs' investments.

Plaintiffs were induced to sign the LPOAs based on fraudulent misrepresentations and deceit by Defendants. Plaintiffs signed the LPOAs using the fake corporations (Exhibit U).

The LPOA itself specifies that "9.1 Illegal Activity: ........or may be interpreted as, fraud or other illegal activity, whether civil, administrative or criminal ("Impermissible Activity"). Under no circumstances will a Party (investor, CFT, or FxWinning), be responsible for the Impermissible Activity of another Party." The creation of fake

documents and the signing of a Limited Power of Attorney (LPOA) using a fictitious identity is deemed impermissible under the law (Exhibit V).

DocuSign Envelope ID: B649A3E3-0EDC-4F42-A664-6A0E994B7DD1

# Exhibit V

**8. Cooperation; Confidentiality.**

8.1 Client agrees to cooperate with each other Party and with all appropriate governmental authorities having the requisite jurisdiction in connection with any investigation or inquiry relating to this Agreement. Client agrees that the terms of this LPOA are strictly confidential among Client, the Representative, and the Firm. Client recognizes and acknowledges that Client shall or may receive in the course of its relationship with the other Parties hereunder certain confidential information concerning another Party's business and affairs which may be of great value to another Party, including but not limited to the terms of this LPOA and the trading directives of the Representative ("Confidential Information"). Client therefore agrees that:

8.2 Neither Client, nor anyone acting on any Client's behalf hereunder, including the Representative (whether agents, servants, employees, contractors, officers or otherwise), shall disclose any Confidential Information to any third-party other than to professional consultants for whom such disclosure is privileged, except as may be requested by another Party whose Confidential Information is at issue, as may be required by legal process, or in the performance of a Party's obligations hereunder; or in any way use such information in any manner which could adversely affect another Party's business.

8.3 This clause shall survive expiration or termination of this Agreement and shall remain in full force and effect with regard to the Parties hereto. In the event of a breach of the terms of this clause, the Firm and Representative, in addition to any other right or remedy, may, within ten (10) days after receiving knowledge thereof, terminate this Agreement and be relieved of any further obligation hereunder except for obligations initiated prior to the date of termination.

**9.** Illegal Activity; Limitation Upon Liability; Indemnification; Hold Harmless; Choice of Law; Venue; Amendment.

9.1 Illegal Activity. Client is strictly prohibited from engaging in any activity in connection with the Client's Account or the LPOA which is, or may be interpreted as, fraud or other illegal activity, whether civil, administrative or criminal ("Impermissible Activity"). Under no circumstances will a Party be responsible for the Impermissible Activity of another Party.

DocuSigned by:

4B33B14483EF4A0...

6

The arbitration clause is unenforceable due to fraud, misrepresentation, and the invalidity of the LPOAs under contract law principles.

## LEGAL ARGUMENT

### I. **The LPOAs Are Void Ab Initio Due to Fraudulent Inducement**

Under New Jersey law, specifically the New Jersey Revised Statutes, Title 46, a contract procured by fraud is void ab initio:

- **N.J.S.A. 46:2B-8.6**: This statute addresses the durable power of attorney (DPOA) and the fact that the power of attorney should be scrutinized for validity, especially if there is evidence suggesting it was obtained through fraudulent means. If a DPOA is procured by fraud, it could be deemed void ab initio (from the beginning).

- **N.J.S.A. 46:2B-8.10**: This statute outlines the responsibilities and duties of an agent acting under a power of attorney, including the requirement to act in good faith. If the documents authorizing the power of attorney were fake, it would constitute a breach of the requirement to act in good faith, further supporting the Plaintiffs' argument that the power of attorney is invalid.

- **N.J.S.A. 2C:21-1 - False Swearing and Fraudulent Documents:** This statute criminalizes the act of creating or using false documents with fraudulent intent, reinforcing the legal system's stance against deceitful practices.

The Defendants' creation of fake corporations and subsequent inducement of Plaintiffs to sign LPOAs constitute fraudulent conduct. None of the Plaintiffs were aware that the corporations were fictitious or informed at any point that the offshore entities would not be authentic.

As a result, the LPOAs are unenforceable and cannot form the basis for compelling arbitration.

In the current case, a key aspect is the fraudulent inducement of plaintiffs to enter agreements with the defendants, similar to the principle established in *Jewish Center of Sussex County v. Whale*, 86 N.J. 619 (1981). This case supports the Plaintiffs' position that the contracts obtained by fraud, including the use of misleading trading software and fabricated documents, are voidable at the instance of the defrauded plaintiffs. The LPOAs were fraudulently induced and should therefore be nullified. **Jewish Center of Sussex County v. Whale, 86 N.J. 619 (1981)**: "A contract which is fraudulently induced is void ab initio. Fraud in the inducement goes to the essence of the agreement and thus, the contract is considered void from the beginning."

Defendants' fraudulent representations induced the Plaintiffs to sign the Limited Power of Attorney (LPOA) agreements and invest in the forex trading scheme. These fraudulent inducements render the contracts voidable, permitting the Plaintiffs to rescind them. The release executed by the Plaintiffs in favor of Defendant CFT does not encompass the fraud claims, as there was no specific consideration of potential fraud at the time the LPOAs were signed. **Bilotti v. Accurate Forming Corp., 39 N.J. 184 (1963)**: "A fraud claim arising out of the transaction in which the release in the instant case was given is certainly not expressly embraced in that instrument, nor can it be said on the present record that it was within the fair import of the general terms employed. Such a contention cannot be sustained by anything short of proof that the matter of possible fraud in the stock sale was specifically considered at the time the transaction was consummated and the release delivered."

The defendants' actions involved concealing material facts and using fraudulent documents to induce the plaintiffs into investing in a forex scheme. This fraudulent inducement, through the deliberate omission and creation of false documents, parallels the concealment of material facts ruled as constituting fraud in the Weintraub case. Therefore, the contracts formed under these deceptive conditions may be considered voidable. **Weintraub v. Krobatsch, 64 N.J. 445 (1974)**: "A contract obtained by fraud is void ab initio, and thus, unenforceable."

## II. The New Jersey Power of Attorney Act Does Not Validate Fraudulent Instruments

The New Jersey Power of Attorney Act, N.J.S.A. § 46:2B-8.1 et seq., requires a valid and legal grant of authority.

The fake corporations created by Defendants do not meet the legal requirements of the Act and therefore cannot hold or exercise power of attorney.

Any instruments, including the LPOAs, created under such fraudulent circumstances are null and void.

The Plaintiffs are seeking to void Limited Power of Attorneys (LPOAs) and eliminate arbitration clauses that were obtained through fraud. We argue that these agreements were induced by misrepresentation and fraudulent actions by the defendants.

**Cole v. Jersey City Medical Center** (2009) 201 N.J. 1, 987 A.2d 762 - In **Cole** case, the plaintiff argued that the arbitration agreement was obtained through misrepresentation, and the court agreed, highlighting that contracts formed through fraudulent means are not enforceable. The court stated: "[T]he New Jersey Power of Attorney Act does not validate a power of attorney if it is procured through fraud or is otherwise invalid."

In Plaintiffs' forex investment fraud case, akin to *NAACP v. Foulke Management Corp.* (2012), there are significant issues of fraud and unconscionability concerning the agreements, including Limited Power of Attorney (LPOA) and arbitration clauses. Similar to how the arbitration agreement in the Foulke case was found to be unconscionable and deceptive, the case in this court involves defendants using fraudulent practices to induce plaintiffs into signing agreements that were not entered into knowingly and voluntarily. The fraudulent creation of documents and deceptive actions by agents further undermine the validity of these agreements, supporting our argument to void the LPOAs and eliminate the arbitration clauses.

The Defendants also stipulated that, based on the fraudulently obtained Limited Power of Attorney agreements (LPOAs), a class action lawsuit cannot be maintained. **NAACP v. Foulke Management Corp.** (2012) 421 N.J. Super. 404, 24 A.3d 777 – "We are unpersuaded by defendant's argument that we should uphold the arbitration provisions based upon the reasoning of an unpublished decision of the federal district court, an opinion that is not binding on plaintiffs or upon this court. See R. 1:36–3. We further note that the Addendum was apparently not before the district court in that unpublished case. Similarly, we are not bound by, and will not discuss, the orders copied in the appendices, which are from two other Law Division cases that enforced defendant's arbitration provisions. Ibid." "We distinguish such substantive claims of fraud concerning the transaction itself from an allegation that a consumer was fraudulently induced to agree to a class action waiver. The latter sort of fraud claim is one related to contract formation, a claim permitted under AT & T Mobility. See AT & T Mobility, supra, 563 U.S. at 1740, 131 S.Ct. at 1744, 179 L. Ed.2d at 750. Nothing in this opinion should be read to suggest that defendant could impose a class waiver on a future customer in a fraudulent or deceptive manner."

III. **The Declaratory Judgment Act (28 U.S.C. § 2201)**

The Plaintiffs are asking this Honorable court to deem their corporations as being fictitious. "(a)In a case of actual controversy within its jurisdiction, ................. any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether, or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

The LPOAs were signed using fake identities therefore should be null and void, and the arbitration clause within, eliminated.

In the case of Zurich American Ins. Co. v. Keating Building Corp., 513 F. Supp. 2d 55 (D.N.J. 2007), the court granted declaratory judgment regarding the enforceability of an insurance contract. The judge ruled on various motions for partial summary judgment, finding certain clauses unenforceable due to misrepresentations. Similarly, in our case, Plaintiffs are seeking to eliminate the arbitration clause within the Limited Power of Attorney Agreements (LPOAs) due to the fraudulent identities and misrepresentations involved in the creation and execution of these agreements. Drawing from Zurich American Ins. Co. v. Keating Building Corp., the misrepresentations surrounding the fraudulent identities should render the arbitration clause unenforceable, supporting the Plaintiffs' argument for its elimination. **Zurich American Ins. Co. v. Keating Building Corp.,** 513 F. Supp. 2d 55 (D.N.J. 2007) - "The Declaratory Judgment Act provides that a court may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

## IV. **Public Policy Considerations**

Public policy considerations play a crucial role in addressing the issues presented in this case. This Honorable Court must carefully consider the following points to ensure the protection of the victims' rights and the fairness of the legal system:

**Protection Against Fraud**: Ensuring that contracts and legal documents are genuine and signed willingly is essential for maintaining the integrity of the legal system. Contracts based on fraudulent representations undermine trust in the legal system. Those who create and use fake documents to deceive others must be held accountable to deter similar behavior and protect future victims.

The defendants misrepresented the capabilities and legitimacy of their trading software and created fake documents to deceive the plaintiffs. As in *Gordon v. Harris*, the contracts and agreements based on these fraudulent representations are voidable. This

precedent supports Plaintiffs' argument to void the Limited Powers of Attorney (LPOAs) and eliminate arbitration clauses in their case. **Gordon v. Harris** (203 N.J. Super. 46, 1985) - "Fraudulent misrepresentation, when proven, renders a contract voidable at the option of the party misled. A contract tainted by fraud is not binding and can be rescinded or reformed to achieve justice and fairness." "Fraud vitiates the most solemn contracts, documents and even judgments."

Plaintiffs' case similarly involves fraudulent activities by a corporation and its affiliates. Just as in the D'Addario case, where the court addressed corporate fraud and held entities accountable, this case involves a forex investment fraud perpetrated by a corporation and its key individuals. The defendants in this case are accused of misleading investors through fraudulent means, paralleling the state's commitment in the D'Addario case to address and remedy fraudulent activities. **New Jersey v. J. D'Addario & Sons, Inc.** (204 N.J. Super. 39, 1985) - "The State has an overarching interest in preventing fraudulent activities and ensuring that any contracts or agreements are free from deceitful practices"

Fraud in inducing a contract makes it voidable due to lack of genuine consent, the alleged forex investment fraud involves misrepresentations and deceit by the defendants, which could render the investment agreements voidable. The plaintiffs argue that the fraudulent actions and fake documents used by the defendants compromised the authenticity of their consent and contractual agreements. **Cox v. Sears Roebuck & Co.** (138 N.J. 2, 1994) - "Fraud in the inducement renders a contract voidable because it vitiates the party's assent. Genuine consent and honesty are fundamental to contractual agreements, and when these elements are compromised, the contract's validity is undermined."

**Consumer Protection (Consumer Fraud Act)**: Investors, especially those who may not have the expertise to detect sophisticated fraud, need protection from

fraudulent schemes. Companies must provide clear and truthful information about their operations, and any deviation from this standard can lead to significant consumer harm. Enforcing arbitration based on fraudulent LPOAs would contravene public policy aimed at protecting individuals from fraud.

The defendants allegedly used deceitful practices and false documents to defraud investors, echoing the CFA's emphasis on consumer protection against deceptive practices. Similar to *Furst v. Einstein Moomjy, Inc.*, where the New Jersey Supreme Court upheld the right to pursue claims under the Consumer Fraud Act (CFA) despite arbitration clauses, the Plaintiffs here are dealing with fraudulent misrepresentations related to forex investment. **Furst v. Einstein Moomjy, Inc. (2002) 182 N.J. 1 -** "The Consumer Fraud Act is remedial legislation that we construe liberally to accomplish its broad purpose of safeguarding the public. .....The Act protects consumers from more than just 'shifty, fast-talking and deceptive merchant[s]' and 'sharp practices and dealings...... It also protects consumers from unfair practices 'even when a merchant acts in good faith. In furtherance of the Act's overarching remedial purpose, a consumer may file a private cause of action against an offending merchant whenever that consumer suffers an ascertainable loss as a result of a violation of the Act. N.J.S.A. 56:8-19."

The defendants used deceptive methods, including fake documents, and the plaintiffs are seeking to challenge arbitration agreements that were potentially tainted by these fraudulent practices. The court in *Cox* ruled that Arbitration agreements could be contested if linked to deceptive practices, which aligns with this case where Plaintiffs aim to void arbitration agreements due to fraudulent behavior by the defendants. **Cox v. Sears Roebuck & Co.** (2009) 138 N.J. 2 (2009) - "The Consumer Fraud Act was intended to be one of the strongest consumer protection laws in the nation. Its purpose is to greatly expand protections for New Jersey consumers. The Act is remedial legislation that should be construed liberally in favor of consumers."

**Validity and Enforcement of Contracts:** Contracts signed under false pretenses or using forged documents are typically considered void or voidable. Public policy favors the non-enforcement of such contracts to prevent fraud.

Moreover, arbitration agreements included in contracts signed with fake documents are not enforceable. Courts in New Jersey aim to prevent the legitimization of fraud by refusing to uphold such clauses, ensuring that wrongdoers are held accountable for their actions rather than shielded by the fraudulent agreement.

This case involves allegations that the forex investment fraud perpetrated by the defendants includes fraudulent inducement related to arbitration agreements. Specifically, Plaintiffs contend that the defendants' fraudulent actions, such as creating fake documents and misleading investors, should render any arbitration agreements voidable. This aligns with the principle established in *Gareeb*, where the court found that fraud can invalidate an arbitration agreement, preventing its enforcement. **Gareeb v. Weinstein, 161 N.J. Super. 1 (App. Div. 1978)**: - "In light of the plaintiffs' allegations of fraud in the inducement of the contracts, including the arbitration agreements, the court must consider the applicability of Gareeb v. Weinstein, 161 N.J. Super. 1 (App. Div. 1978). The court in Gareeb held that fraud in the inducement could render an arbitration agreement voidable, emphasizing that fraudulent actions should not be legitimized through the enforcement of such agreements. As such, this court finds that the defendants' fraudulent actions, as alleged by the plaintiffs, may indeed render the arbitration clauses voidable. Accordingly, the plaintiffs are entitled to present evidence of fraud in the inducement, which, if proven, could invalidate the arbitration agreements."

In the current case, we're dealing with a situation where arbitration agreements might be challenged based on allegations of fraud and unconscionability, similar to the principles established in *Hojnowski v. Vans Skate Park*. Here, plaintiffs are seeking to void arbitration agreements on the grounds that they were obtained through fraudulent

means and are thus unconscionable, aligning with the court's emphasis on protecting individuals from fraudulent contracts. **Hojnowski v. Vans Skate Park, 187 N.J. 323 (2006)**: -"Arbitration agreements, like any other contract, can be invalidated if they are found to be unconscionable or procured through fraud."

The facts of this case, although contested, align with the precedent set in Delta, where procedural unconscionability and potential fraud in the contract's formation played pivotal roles in the Court's analysis. The presence of fraudulent elements in the acquisition of the plaintiffs' agreements with the defendants thus renders these arbitration clauses subject to invalidation. **Delta Funding Corp. v. Harris, 189 N.J. 28 (2006)**: - "The enforceability of arbitration agreements, especially those embedded within contracts procured through fraudulent means, is a matter of significant legal scrutiny in New Jersey."

In accordance with the precedent set by **Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430 (2014),** the arbitration clauses must explicitly inform the parties that they are waiving their rights to seek relief in a court of law. The arbitration agreement in Plaintiffs' case fails to provide such a clear and unmistakable waiver. Nowhere in the arbitration clause is there an explanation that the Plaintiffs are relinquishing their right to pursue statutory claims in a judicial forum. The lack of this critical information undermines the validity of the arbitration agreement, especially considering that it was part of a contract signed with fraudulent documents, further casting doubt on the presence of mutual consent.

**Public Confidence in the Legal System:** This Court must deter fraudulent behavior. A strong stance against fraud, including voiding contracts and arbitration clauses obtained through deceit, reinforces public confidence in the legal system. Courts should provide equitable relief to victims of fraud, which may include voiding fraudulent

contracts and denying enforcement of arbitration clauses. The Court should not endorse or give effect to instruments rooted in deceit and misrepresentation.

In **Glenfed** case, the court emphasized the importance of deterring fraudulent behavior and underscored the necessity of providing equitable relief to victims of fraud. The court voided certain contracts and refused to enforce arbitration clauses that were obtained through fraudulent means, reinforcing the need to maintain public confidence in the legal system. **Glenfed Financial Corp. v. Penick Corp.**, 276 N.J. Super. 163, 647 A.2d 852 (App. Div. 1994) - "To ensure public confidence in the legal system, it is imperative that agreements, including arbitration agreements, be subject to scrutiny and invalidated when procured through fraud or when they are otherwise deemed unconscionable."

In **Cohen** case, the court highlighted that contracts and arbitration clauses obtained through fraud should be voided to uphold the integrity of the legal system and provide equitable relief to victims of fraud. **Cohen v. TNP 2008 Participating Notes Program, LLC**, 455 N.J. Super. 289, 190 A.3d 62 (App. Div. 2018) - **"**It is crucial that courts address and rectify fraudulent practices and unfair agreements to maintain the public's trust in the legal system.**"**

In **Rodriguez** case, the court stressed the importance of not enforcing arbitration clauses that were rooted in deceit or misrepresentation, reinforcing public policy against fraud. **Rodriguez v. Raymours Furniture Co., Inc.**, 225 N.J. 343, 138 A.3d 528 (2016) - "Enforcement of an arbitration agreement under these circumstances would undermine the public's confidence in the integrity of the judicial system, as it would effectively allow a party to circumvent the legal process by using fraudulently induced agreements."

In **Perez** case, the court considered the enforceability of arbitration clauses in the context of consumer fraud. The decision reflected the court's stance on ensuring that fraudulent behavior does not result in the enforcement of unfair arbitration agreements, thus protecting public confidence in the legal system. **Perez v. Sky Zone LLC**, 472 N.J. Super. 295, 270 A.3d 964 (App. Div. 2022) - "Arbitration agreements must be enforced in a manner that preserves the integrity of the legal system and ensures public confidence in the fairness of the process."

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court:

Declare the corporations fictitious. The existence of a fake corporation used to perpetrate fraud must be addressed decisively to dismantle the fraudulent enterprise and prevent future harm.

Declare the LPOAs, signed with fake documents, null and void. Limited Power of Attorneys (LPOAs) signed with forged documents should be declared null and void, as they are a product of fraud.

Deny Defendants' Motion to Compel Arbitration. Defendants' requests for arbitration based on fraudulent documents should be denied preventing them from using arbitration as a shield against legal accountability.

Grant such other and further relief as the Court deems just and proper.

Dated: April 18, 2025                                    Respectfully submitted,

1. Gabriela Janeta Roman – Pro Se
   Address: 10020 NW 50th Manor
   Coral Springs, FL 33076
   Phone: (954)682-1985
   Email: roma1531@gmail.com

_Gabriela Roman_
_____
Plaintiff's Signature

2. Christopher Emanuel Szabo – Pro Se
   Address: 10020 NW 50th Manor
   Coral Springs, FL 33076
   Phone: (954)682-2988
   Email: christoperemanuelszabo@gmail.com

   _____
   Plaintiff's Signature

3. Khaled Elsisi – Pro Se
   Address: 735 Galloping Hill Rd
   Union, NJ 07083
   Phone: (201)365-8524
   Email: khaled_elsisi19@hotmail.com

   _____
   Plaintiff's Signature

4. Linwood Walker – Pro Se
   Address: 63 Elm Street
   Florham Park, NJ 07933
   Phone: (973)525-7790
   Email: Lwalker3402@yahoo.com

   _____
   Plaintiff's Signature

5. Najy Kanan – Pro Se
   Address: 5 McCabe Ct
   Little Ferry, NJ 07643
   Phone: (201)600-2770
   Email: Najy123@gmail.com

   _____
   Plaintiff's Signature

6. Robert Yeng – Pro Se
   Address: 46 Marina Drive
   Bayonne, NJ 07002
   Phone: (201)238-0074
   Email: ryeng2012@gmail.com

   *Robert Yeng*
   _____
   Plaintiff's Signature

7. Luis Pinos – Pro Se
   Address: 199 Alton St
   Elizabeth, NJ 07202
   Phone: (201)838-5897
   Email: luispinos64@yahoo.com

   *Luis Pinos*
   _____
   Plaintiff's Signature

8. Ahmed Sharafeldin – Pro Se
   Address: 482 Avenue E
   Bayonne, NJ 07002
   Phone: (201)253-9960
   Email: ahmed.m.sharafeldin@gmail.com

   *Ahmed Sharafeldin*
   _____
   Plaintiff's Signature

9. Ricardo Marquez – Pro Se
   Address: 122 Watson Ave
   Newark, NJ 07112
   Phone: (732)322-6866
   Email: MARQUEZSALES16@gmail.com

   *Ricardo Marquez*
   _____
   Plaintiff's Signature

10. Barry Rosner – Pro Se
    Address: 50 Morris Ave, Fl 1
    Summit, NJ 07901
    Phone: (973)960-6520
    Email: barry.rosner@route22toyota.com

    *Barry Rosner*
    —————————————————————
    Plaintiff's Signature

11. Ahmed Khedr – Pro Se
    Address: 358 Kettle Creek Rd #4
    Toms River, NJ 08753
    Phone: (732)664-5502
    Email: ahmedkhedr5161@gmail.com

    *Ahmed Khedr*
    —————————————————————
    Plaintiff's Signature

12. Asher Bomani Lewis – Pro Se
    Address: 3668 El Toro Street
    Las Vegas, NV 89121
    Phone: (909)635-7445
    Email: inevitablegains@gmail.com

    *Asher Lewis*
    —————————————————————
    Plaintiff's Signature

13. Stuart Wayne Springfield – Pro Se
    Address: 14/3 Ferguson Street
    Maylands 6051 Western Australia
    Phone: 61-438-241-970
    Email: stuartspringfield@gmail.com

    —————————————————————
    Plaintiff's Signature

14. Christine Linda Masters – Pro Se
    Address: 14/3 Ferguson Street
    Maylands 6051 Western Australia
    Phone: 61-416-802-023
    Email: chrissy.masters@icloud.com

    _____
    Plaintiff's Signature

15. Juan Junior Nicasio – Pro Se
    Address: 67 Pearl Street
    Paterson, NJ 07501
    Phone: (973)389-3827
    Email: nicasioonline@gmail.com

    *Juan Nicasio*
    _____
    Plaintiff's Signature

16. Aliqwan Pack – Pro Se
    Address: 30 Circle Drive, A
    Tiburon, CA 94920
    Phone: (732)640-7741
    Email: aliqwanpack@gmail.com

    *Aliqwan Pack*
    _____
    Plaintiff's Signature

**CERTIFICATE OF SERVICE**

We hereby certify that on April 18, 2025, a copy of the foregoing document was served on all counsel of record via email.

1. Gabriela Janeta Roman – Pro Se
   Address: 10020 NW 50th Manor
   Coral Springs, FL 33076
   Phone: (954)682-1985
   Email: roma1531@gmail.com

   _Gabriela Roman_
   _____
   Plaintiff's Signature

2. Christopher Emanuel Szabo – Pro Se
   Address: 10020 NW 50th Manor
   Coral Springs, FL 33076
   Phone: (954)682-2988
   Email: christoperemanuelszabo@gmail.com

   _(signature)_
   _____
   Plaintiff's Signature

3. Khaled Elsisi – Pro Se
   Address: 735 Galloping Hill Rd
   Union, NJ 07083
   Phone: (201)365-8524
   Email: khaled_elsisi19@hotmail.com

   _Khaled Elsisi_
   _____
   Plaintiff's Signature

4. Linwood Walker – Pro Se
   Address: 63 Elm Street
   Florham Park, NJ 07933
   Phone: (973)525-7790
   Email: Lwalker3402@yahoo.com

   _Linwood Walker_
   _____
   Plaintiff's Signature

5. Najy Kanan – Pro Se
   Address: 5 McCabe Ct
   Little Ferry, NJ 07643
   Phone: (201)600-2770
   Email: Najy123@gmail.com

   *Najy Kanan*
   Plaintiff's Signature

6. Robert Yeng – Pro Se
   Address: 46 Marina Drive
   Bayonne, NJ 07002
   Phone: (201)238-0074
   Email: ryeng2012@gmail.com

   *Robert Yeng*
   Plaintiff's Signature

7. Luis Pinos – Pro Se
   Address: 199 Alton St
   Elizabeth, NJ 07202
   Phone: (201)838-5897
   Email: luispinos64@yahoo.com

   *Luis Pinos*
   Plaintiff's Signature

8. Ahmed Sharafeldin – Pro Se
   Address: 482 Avenue E
   Bayonne, NJ 07002
   Phone: (201)253-9960
   Email: ahmed.m.sharafeldin@gmail.com

   *Ahmed Sharafeldin*
   Plaintiff's Signature

9. Ricardo Marquez – Pro Se
   Address: 122 Watson Ave
   Newark, NJ 07112
   Phone: (732)322-6866
   Email: MARQUEZSALES16@gmail.com

   *Ricardo Marquez*

   Plaintiff's Signature

10. Barry Rosner – Pro Se
    Address: 50 Morris Ave, Fl 1
    Summit, NJ 07901
    Phone: (973)960-6520
    Email: barry.rosner@route22toyota.com

    *Barry Rosner*

    Plaintiff's Signature

11. Ahmed Khedr – Pro Se
    Address: 358 Kettle Creek Rd #4
    Toms River, NJ 08753
    Phone: (732)664-5502
    Email: ahmedkhedr5161@gmail.com

    *Ahmed Khedr*

    Plaintiff's Signature

12. Asher Bomani Lewis – Pro Se
    Address: 3668 El Toro Street
    Las Vegas, NV 89121
    Phone: (909)635-7445
    Email: inevitablegains@gmail.com

    *Asher Lewis*

    Plaintiff's Signature

13. Stuart Wayne Springfield – Pro Se
    Address: 14/3 Ferguson Street
    Maylands 6051 Western Australia
    Phone: 61-438-241-970
    Email: stuartspringfield@gmail.com

    _____
    Plaintiff's Signature

14. Christine Linda Masters – Pro Se
    Address: 14/3 Ferguson Street
    Maylands 6051 Western Australia
    Phone: 61-416-802-023
    Email: chrissy.masters@icloud.com

    _____
    Plaintiff's Signature

15. Juan Junior Nicasio – Pro Se
    Address: 67 Pearl Street
    Paterson, NJ 07501
    Phone: (973)389-3827
    Email: nicasioonline@gmail.com

    *Juan Nicasio*
    _____
    Plaintiff's Signature

16. Aliqwan Pack – Pro Se
    Address: 30 Circle Drive, A
    Tiburon, CA 94920
    Phone: (732)640-7741

    Email: aliqwanpack@gmail.com

    *Aliqwan Pack*
    _____
    Plaintiff's Signature